UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ENERGY XXI, GOM, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-10-00110 |
| | § | |
| NEW TECH ENGINEERING, L.P., | § | |
| | § | |
| *Defendant*. | § | |

**ORDER**

Pending before the court is defendant New Tech Engineering, L.P.'s ("New Tech") motion for summary judgment. Dkt. 16. Having considered the motion, response, reply, and the applicable law, the court defers its ruling on the motion until after it has received further briefing as outlined below.

**I. BACKGROUND**

Plaintiff Energy XXI, GoM, LLC ("Energy XXI") owns and operates South Timbalier 21, No. 138 well (the "Well"), which is located off of the coast of Louisiana on the Outer Continental Shelf. Dkts. 15, 16. New Tech and Energy XXI are parties to a Master Service Agreement ("MSA"), which governs work ordered by Energy XXI and accepted by New Tech, including work on the Well. The MSA defines the rights, obligations, and liabilities of both parties. Dkt. 16, Exh. 3 (MSA). In January 2009, Energy XXI was performing a recompletion operation on the Well. Dkt. 16. Tony Hines and Jim Simon were working at the Well as wellsite consultants, or "company men," through New Tech,[1] and they were responsible for overseeing the operation. Dkt. 15, Exh. 1.

---

[1] New Tech claims that Simon and Hines were independent contractors and that it merely performed billing services. *See* Dkt. 15, Exh. A.

On or about January 15, 2009, a workstring became stuck in the Well. *Id.* Energy XXI claims that the workstring became stuck because its procedures were not followed—namely, using reverse circulation of excess cement after cementing work is performed below the retainer. *Id.* Energy XXI claims that it spent 37 days attempting to recover the workstring before the recompletion project could be completed, resulting in an expenditure of approximately $9,000,000.[2] *Id.*

Energy XXI filed a claim against New Tech for negligence relating to the January 15, 2009 incident, and it later added a claim for gross negligence and breach of the MSA. Dkts. 1, 8. New Tech filed a counterclaim for breach of the MSA, claiming that Energy XXI breached the MSA because it failed to indemnify and hold New Tech harmless for its work as required by the MSA. Dkt. 6. Additionally, New Tech seeks a declaratory judgment stating that Energy XXI is contractually obligated under the MSA to indemnify New Tech against damages arising from the incident giving rise to this claim. *Id.* Finally, New Tech requests an award of attorneys' fees it has incurred as a result of this lawsuit. *Id.*

The relevant indemnity provision of the MSA states:

Energy XXI shall be responsible, and Contractor [New Tech] shall never be liable, for property damage of . . . Energy XXI . . . and Energy XXI agrees to defend, indemnity [sic] and hold harmless, Contractor, against any and all such claims, demands, losses or suits, (including, but not limited to, claims, demands or suits for property damage . . .) which may be brought against Contractor by Energy XXI, any employee of Energy XXI or the legal representative or successor of any such employee, in anywise arising out of or incident to work being performed on or about Energy XXI's property or jobsite, irrespective of whether such claims, demands or suits are based on the relationship of master and servant, third party, or otherwise,

---

[2] More recent briefing suggests damages are now in excess of $10 million. Dkt. 24.

>and even though occasioned, brought about, caused by, arising out of or resulting from Energy XXI's work, or its acts, activities, or presence on any location, structure or vessel, or travel to and from such location, structure, or vessel, the unseaworthiness or unairworthiness or [sic] vessels and craft, or the negligence or strict liability, in whole or in part, of Contractor, or by or from any other means, relationship or cause, without limitation whatsoever.[3]

Dkt. 16, Exh. C (MSA).

## II. ANALYSIS

New Tech seeks summary judgment on its counterclaim and request for declaratory relief, and it requests that the court dismiss all of Energy XXI's claims. Energy XXI opposes the motion, claiming that the indemnity provision does not apply to Energy XXI's gross negligence and breach of contract claims against New Tech. Dkt. 20. Energy XXI alternatively requests a continuance so that it may take the depositions of Tony Hines and Jim Simon. *Id.*

The parties provide only a cursory discussion of which law applies to the interpretation of the indemnity provision. Energy XXI states that the issue of what body of substantive law to apply "has yet to be determined," though it notes that it "is of the belief that maritime law will most likely govern the majority of the claims herein." Dkt. 20 at 6. New Tech claims that "'[t]he interpretation of an indemnity clause in a *maritime contract* is ordinarily governed by federal maritime rather than state law.'" Dkt. 21 at 10 (quoting *Corbitt*, 654 F.2d at 332) (emphasis added). New Tech fails, however, to explain why it believes the MSA is a maritime contract. There must be a "significant relationship to traditional maritime activities" to invoke admiralty jurisdiction. *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223, 1231 (5th Cir. 1985). The "mere inclusion of maritime obligations in a mixed contract does not, without more, bring nonmaritime obligations

---

[3] In the actual MSA, this text is in all capital letters, bold, and underlined. The court has changed it to a regular font for ease of reading.

3

within the pale of admiralty law.  That the contract contemplated in part the use of instruments of admiralty, therefore, is not sufficient to oust OCSLA-adopted state law . . . ."  *Id.* at 1231-32; *see also Herb's Welding Inc. v. Gray*, 470 U.S. 414, 422, 105 S. Ct. 1421 (1985) (finding that offshore drilling is not a maritime activity); *Union Tex. Petroleum Corp. v. PLT Eng'g, Inc. ("PLT")*, 895 F.2d 1043, 1049 (5th Cir. 1990) (finding that because the "principal obligation of [the defendants] was to build the gathering line and connect it to the platform and the transmission line," which were "the subjects of oil and gas exploration and production and "not traditionally maritime," and concluding that even though "maritime operations were undoubtedly contemplated," they were not sufficiently maritime to oust state law).

The parties do not dispute that the Well is located on the Outer Continental Shelf off of the coast of Louisiana.  The court, therefore, must determine if state law applies as surrogate federal law under the Outer Continental Shelf Lands Act ("OCSLA").  In making this determination, courts consider the factors enunciated in *Union Texas Petroleum Corp. v. PLT Engineering, Inc.*: "(1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil seabed, or artificial structures permanently or temporarily attached thereto)"; "(2) Federal maritime law must not apply of its own force"; and (3) The state law must not be inconsistent with Federal law."  895 F.2d at 1047.

It appears that the alleged torts arose on a structure permanently or temporarily attached to the seabed on the Outer Continental Shelf, as the workstring was caught in the Well, which is located on the Outer Continental Shelf.  The court suspects that the breach of contract claim also arose on an OCSLA situs because the majority of the work to be performed under the MSA was likely "on stationary platforms or other enumerated OCSLA situses."  *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 787 (5th Cir. 2009) (holding that "a contractual indemnity claim . . . arises on an [OCSLA] situs if a majority of the performance called for under the contract is to be

4

performed on" OCSLA situses).  The court likewise suspects that federal maritime does not apply on its own force and that Louisiana law is not inconsistent with federal law, particularly in light of the Fifth Circuit's application of Louisiana law in *Houston Exploration Co. v. Halliburton Energy Services*, 269 F.3d 528, which is factually similar to this case.  The lawsuit in *Houston Exploration* arose from a blowout that occurred from a well located, like the Well in this case, on the Outer Continental Shelf off of the coast of Louisiana.  *Houston Exploration Co.*, 269 F.3d at 529.  The *Houston Exploration* blowout happened after an employee of the defendant erroneously inserted an IPO valve that contained only one pin instead of five into a test string.  *See id.* at 530.  Eventually, the pressure in the well rose, the single pin sheared, and natural gas blew out into the atmosphere. *See id.*  It took 19 days to bring the blowout under control and place the well back into production. *See id.*  The parties in the *Houston Exploration* case, like the parties in this case, had a contract containing an indemnity agreement that portended to protect the defendant from liability for the tort. *See id.*  The *Houston Exploration* defendant argued that the indemnity provision in the contract protected it from liability.  *See id.* at 531.  The potential indemnitor argued that the indemnity agreement was unenforceable because the defendant was grossly negligent.  *See id.*  Neither party in that case disputed that the indemnity agreement could not cover gross negligence because, under Louisiana Civil Code article 2004, "[a]ny clause is null that, in advance, excludes or limits the liability of one party for intentional or gross fault that causes damage to the other party."  *See id.*  The Fifth Circuit agreed with this conclusion, stating that, under Louisiana law, a "waiver of liability for intentional misconduct or gross negligence . . . is void."  *Id.*

   It appears from the aforementioned discussion that Louisiana law should apply as surrogate federal law in this case and that the indemnity provision, if construed to cover gross negligence as New Tech contends, is void.  However, the court is reticent to reach this conclusion without briefing

5

from the parties about which law to apply.  Therefore, the court **ORDERS** Energy XXI to provide briefing on the choice-of-law issue on or before **January 10, 2011**.  The court **ORDERS** New Tech to respond to Energy XXI's choice-of-law briefing on or before **January 21, 2011**.

　　　　Signed at Houston, Texas on January 3, 2011.

_____
Gray H. Miller
United States District Judge