# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| ENERGY XXI, GoM, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-10-00110 |
| | § | |
| NEW TECH ENGINEERING, L.P., *et al.* | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is (1) defendant New Tech Engineering, L.P.'s ("New Tech") motion for summary judgment on its independent contractor defense and, in the alternative, plaintiff's claim for gross negligence (Dkt. 59); (2) New Tech's motion for certification of an indemnification issue addressed in the court's April 15, 2011 order (Dkt. 42) for interlocutory appeal (Dkt. 53); and (3) plaintiff Energy XXI, GoM, LLC's ("Energy XXI") motion to file a supplemental brief in opposition to New Tech's motion for summary judgment (Dkt. 62). Having considered the motions, related filings, and applicable law, the court is of the opinion that Energy XXI's motion to file a supplemental brief (Dkt. 62) should be, and hereby is, GRANTED. Additionally, New Tech's motion for summary judgment on its independent contractor defense (Dkt. 59) should be DENIED, its alternative motion on the gross negligence issue (Dkt. 59) should be GRANTED, and its motion for certification (Dkt. 53) should be DENIED AS MOOT.

## I. BACKGROUND

Energy XXI owns and operates an oil well (the "Well") off of the coast of Louisiana. Dkts. 15, 16. New Tech and Energy XXI are parties to a Master Service Agreement, which governs consulting work ordered by Energy XXI and accepted by New Tech, including work on the Well.

New Tech and defendant Tony Hines are parties to an Entity Consultant Agreement under which Hines agreed to "provide services as an Independent Professional Consultant . . . to New Tech." Dkt. 60, Exh. 1.  In January 2009, Energy XXI was performing a recompletion operation on the Well, and Hines was working at the Well as a wellsite consultant, or "company man," through New Tech. Dkt. 15, Exh. 1.  He was responsible for overseeing the operation.  *Id.*  On or about January 15, 2009, Hines made a decision to circulate out excess cement after cementing work was performed below the retainer.  This was contrary to Energy XXI's written procedures, which require reverse circulation.  *Id.*  A wellstring became stuck in the Well, and its removal was time consuming and expensive.  *Id.*

Energy XXI asserts claims against New Tech for negligence, gross negligence, and breach of contract.  Dkts. 1, 8, 43.  The court has already granted summary judgment in New Tech's favor on the negligence and breach of contract claims.  *See* Dkt. 42.  Energy XXI also asserts its gross negligence claim against Hines and Nationwide Oilfield Consultants, Inc., Hines's consulting company.  Dkt. 43.  New Tech now seeks summary judgment on its independent contractor defense, or, in the alternative, on Energy XXI's gross negligence claim.  Dkt. 59.

## II. LEGAL STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986).  An issue is

"material" if its resolution could affect the outcome of the action.  *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007).  "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party."  *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact.  *Id.* at 322.  If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required.  *Id* .  "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial."  *Transamerica Ins. Co. v. Avenell* , 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting Fed. R. Civ. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant.  *Envl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008).  The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence

supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

### III. ANALYSIS

#### A.    Independent Contractor Defense

New Tech previously moved for summary judgment on its borrowed servant defense, claiming that Hines was a borrowed servant of Energy XXI and that New Tech therefore could not be held liable for his negligence. *See* Dkt. 42. Energy XXI argued that Hines was either solely New Tech's employee during the relevant time period or New Tech and Energy XXI were dual employers. *See id.* New Tech argued that maritime law should apply to the torts and that there is no dual employer doctrine under maritime law. *Id.* Energy XXI argued that Louisiana law applied to the torts and that, under Louisiana law, New Tech and Energy XXI were dual employers. *Id.* After conducting a choice of law analysis, the court found that Louisiana law applies. *Id.* The court held that Hines was Energy XXI's borrowed servant, but it did not grant summary judgment in New Tech's favor on its borrowed servant defense because there was a question of material fact with regard to the dual-employer doctrine. *Id.*

New Tech now moves for summary judgment, asserting that New Tech and Energy XXI were not dual employers of Hines because New Tech was not even Hines's employer—Hines was an

4

independent contractor.  Dkt. 59.  Energy XXI asserts that the court has already ruled on this issue, that New Tech had the opportunity to make its current arguments when Energy XXI raised the dual employer issue in its briefing in opposition to New Tech's previous motion for summary judgment, and that New Tech instead focused on its argument that Louisiana law should not apply.  Dkt. 62-2.  Energy XXI urges the court to reject New Tech's efforts to offer its objections to the dual employer doctrine in a piecemeal fashion.  *Id.*

The court agrees that it would have been more efficient for New Tech to assert its entire argument relating to its borrowed servant defense during the original round of briefing.  However, the court has a duty to potential jurors to not waste their time if an issue can be determined as a matter of law before trial.  Thus, the court will consider New Tech's argument that it cannot be a dual employer because Hines was an independent contractor.

### 1.    *Legal Standard: Independent Contractor vs. Employee*

Under Louisiana law, "the distinction between employee and independent contractor status is a factual determination to be decided on a case-by-case basis."  *Tower Credit, Inc. v. Carpenter*, 2001-2875, p. 6 (La. 9/4/02); 825 So. 2d 1125, 1129.  The "term independent contractor connotes a freedom of action and choice with respect to the undertaking in question and a legal responsibility on the part of the contractor in case the agreement is not fulfilled in accordance with its covenants."  *Hickman v. So. Pac. Trans. Co.*, 262 So. 2d 385, 390 (La. 1972).  In determining whether an individual is a independent contractor or "mere servant," courts must consider the following factors:

(1)    Was there was a contract between the parties?

(2)    Was the work being done of an independent nature such that the employee/contractor could employ non-exclusive means in accomplishing it?

(3)    Did the contract "call[] for specific piecework as a unit to be done according to the [employee's/contractor's] own methods, without being subject to the control and direction, in the performance of the service, of [the employer/principal], except as to the result of the services rendered"?

(4)     Was "a specific price for the overall undertaking . . . agreed upon"?

(5)     Whether the contract's "duration is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach"?

*Id.* at 390-91.  "The most important inquiry is whether the principal [or employer] retained the right to control the work.  When applying this test, it is not the supervision and control actually exercised that is significant; the important question is whether, from the nature of the relationship, the right to do so exists."  *White v. Frederick*, 44,563, p. 5 (La. App. 2 Cir. 8/19/09); 17 So. 3d 1016, 1019 (citing *Hickman*,  262 So. 2d at 391).  Given the fact-intensive nature of the employee/independent contractor inquiry, there is a presumption in favor of submitting worker-status inquiries to the jury. *Hatchcock v. Acme Truck Lines, Inc.*, 262 F.3d 522, 527 (5th Cir. 2001).

### 2.     *Existence of a Contract*

The first factor asks whether there was a contract because an independent contractor relationship "presupposes a contract between the parties."  *Hickman*, 262 So. 2d at 390.  Here, while there is some dispute as to the content of the agreement between Hines and New Tech because two of the pages are missing, there is no doubt that Hines entered into an independent consulting agreement with New Tech.  Dkt. 59, Exh. B; Dkt. 60, Exh. A.  The agreement is called an "entity consultant agreement," and Hines calls the agreement an "independent consulting agreement."  Dkt. 59, Exh. B; Dkt. 60, Exh. A.  "[T]hat designation is not binding or controlling on the rights of third parties."  *Ellerbe v. Albertsons, Inc.*, 43,452, p. 4 (La. App. 2 Cir. 8/13/08); 989 So. 2d 303, 306. Thus, the mere designation "independent contractor" within the contract does not preclude the court from finding, if the other factors weigh in favor of an employee/employer relationship, that Hines was New Tech's employee.  This factor, however, weighs in favor of a finding that Hines was an independent contractor.

6

### 3.      *Independent Nature of Work Using Nonexclusive Means*

The second and third factors involve the type of work done at the site and whether the principal/employer was in control of that work.  Energy XXI argues that  Hines was performing the very services that New Tech holds itself out to provide—consulting services. Dkt. 60.  Thus, Energy XXI claims that Hines's work was integrally related to the very business of New Tech.  *Id.*  New Tech, however, took no part in the actual work that Hines performed.  The procedures Hines followed in performing his tasks came from Energy XXI, not New Tech.  While Hines was performing the type of services New Tech provides, he was not depending on New Tech to provide the "means of accomplishing" his tasks.  Thus, the second factor weighs in favor of independent contractor status.

### 4.      *Specific Piecework Not Subject to Employer's/Principal's Control*

With regard to the third factor, whether the contract called for specific piecework to be done according to Hines's own methods without being subject to the control and direction of New Tech, Energy XXI also points out that while Hines's job at the Well could be considered specific piecework not subject to New Tech's control, the agreement between Hines and New Tech contemplated an ongoing relationship whereby Hines would provide services to New Tech's clients. These services, however, are akin to specific piecework because there is a specific job for each client.  The manner in which Hines performed the job was not subject to New Tech's control.  The third factor thus weighs in favor of a finding that Hines was an independent contractor.

### 5.      *Specific Price for the Overall Undertaking*

The fourth factor is whether a specific price for the overall undertaking was agreed upon. Hines invoiced New Tech for his work twice a month, and it appears that he would continue to do so until the project was over.  Dkt. 60, Exh. A.  New Tech argues that "true employees do not have

to invoice their employers in order to get paid." Dkt. 61 at 5.  New Tech relies on *Kirk v. Harter* and *Prestenbach v. Global Marine, Inc*. In *Kirk*, the Eighth Circuit considered whether an individual who submitted invoices, rather than using a time clock, to report hours, and found that the "absence of regular, periodic payments is an indicia of independent contractor status."  *Kirk v. Harter*, 188 F.3d 1005, 1008 (8th Cir. 1999).  In *Prestenbach*, the Fifth Circuit noted that an oilfield consultant who invoiced for his work as an independent contractor rather than "waiting for a paycheck as a part-time employee would generally be expected to do," was an independent contractor and not an employee under the Longshore and Harbor Workers Compensation Act.  *Prestenbach v. Global Marine, Inc.*, 244 Fed. App'x 557, 560 (5th Cir. 2007).  Here, Hines was working offshore and had to submit his hours via an invoice, but his payments were in regular intervals.  Energy XXI set Hine's rate of pay, and New Tech handled the billing services and deducted its fee before paying Hines.  Dkt. 59, Exh. B. This factor weighs neither for not against a finding that Hines was an independent contractor, as the evidence that there was not specific price and that Hines was paid at regular intervals weighs in favor of employee status, but the evidence that Energy XXI set Hines's rate of pay and that Hines had to submit invoices to be paid weighs in favor of independent contractor status.

### 6.  Duration of Contract and Termination Rights

The fifth factor considers whether the contract was for a specific term and whether the parties to the agreement could terminate or discontinue the agreement at will.  "The right to terminate the relationship without cause, where no term of employment is prescribed, is characteristic of the master and servant or employer-employee relationship.  The right is at the same time antagonistic to the independent contractor relationship." *Hickman*, 262 So. 2d at 391.  Here, the first page of the contract states that it "may be terminated without cause at any time by either party," and it does not

8

appear that the contract was for a specific time period.  Dkt. 60, Exh. A.  This factor thus weighs in favor of a finding that Hines was New Tech's employee.

### 7.  *Control Over Employee/Contractor's Work*

The final factor is the extent to which the employer/principal controls the employee's/contractor's work.  Courts consider the totality of the circumstances when determining whether a party had a right to control, and the burden in on the party seeking to establish an employee-employer relationship.  *Hillman v. Comm-Care, Inc.*, 2001-1140, p. 9 (La. 1/15/02); 805 So. 2d 1157, 1163. In assessing control, "it is not the supervision and control which is significant"; "the important question is whether, from the nature of the relationship, the right to do so exists." *Hickman*, 262 So. 2d at 391. "The four primary factors evidencing a right to control are: (1) selection and engagement, (2) payment of wages, (3) power of dismissal, and (4) power of control." *Mouton v. We Care Homes, Inc.*, 2005-215, p. 7 (La. App. 3d Cir. 11/2/05); 915 So. 2d 971, 976-77 (citing *Hillman*, 805 So. 2d at 1162).  "The element of control that distinguishes an employee from an independent contractor focuses on whether the purported employer had the right to control the method and means by which the individual performed the work tasks." *Hillman,* 2001-1140, at p. 12 (La. 1/15/02); 805 So. 2d at 1164.

Here, the first two factors of the control test weigh in favor of a finding that Hines was New Tech's employee because New Tech had control over the administrative aspects of Hines's employment.  New Tech performed a background and reference check before engaging Hines as a consultant, and it conducted a series of telephone interviews.  Dkts. 27-4, 39.  It then marketed Hines's services to oil companies.  Dkt. 24.  Hines invoiced New Tech in accordance with their agreement, and New Tech issued paychecks to Hines.  *Id.*

The final two factors of the control test, however, weigh in favor of a finding that Hines was an independent contractor.  New Tech had the power to terminate its relationship with Hines, in general, but Energy XXI had the authority to terminate the work Hines was doing at its Well.  *See* Dkt. 42.  And Energy XXI, not New Tech, had the right to control the method and means by which Hines performed his tasks at the Well.  *See id.*  While New Tech had control over how Hines received his paychecks, this can hardly be considered control over his work.  Thus, this factor weighs in favor of a finding that Hines was an independent contractor.

New Tech urges the court to focus solely on this factor, arguing that Louisiana courts "generally examine solely the issue of whether the agency controlled the work to be performed." Dkt. 59 at 6.  New Tech refers the court to three Louisiana cases involving temporary staffing agencies in which Louisiana courts have focused on the lack of control over the employee and held that the employees were independent contractors: *Jones v. Angelette*, *Mize v. Van Meter, M.D. & Associates*, and *Prater v. Porter*.  In *Jones v. Angelette*, a staffing agency "was responsible for the hiring, work schedule, compensation, and malpractice insurance" of a physician, but it "exercised no control relating to the manner and means in which [the physician] performed his professional medical services while working at the . . . emergency room."  *Jones v. Angelette*, 2005-0597, p. 6 (La. App. 4 Cir. 12/21/05); 921 So. 2d 1017, 1020-21.  The court held that the staffing agency was not vicariously liable for the physician's actions.  *Id.*  Similarly, in *Mize v. Van Meter, M.D. & Assocs.*, the court held that a staffing agency was not vicariously liable for the torts of an emergency room physician against a non-patient while working in the emergency room even though the hospital considered the physicians supplied by the agency to be the employees of the agency, the agency scheduled the shifts for the physicians, and the hospital did not have the authority to fire the physicians without going to the staffing agency first.  *Mize v. Van Meter, M.D. & Assocs.*, 2007-

0616, p. 7 (La. App. 4 Cir. 12/19/07); 973 So. 2d 947, 951.  The court found, after considering the totality of circumstances, that the staffing agency did not have the right to control the physician while he was working in the emergency room.  *Id.* at p. 8; 973 So. 2d at 952; *see also Prater v. Porter*, 98-1481 (La. App. 3 Cir. 3/3/99); 737 So. 2d 102, 106 (holding that physicians were independent contractors of a staffing agency because it was "obvious from the agreements that the physicians were under the control and supervision" of the hospital, not the staffing agency).

The court acknowledges that the "control" aspect of the independent contractor test is important and that some Louisiana cases have focused almost exclusively on that factor, and this factor is thus given considerable weight in the court's analysis.  However, it is clear from *Morgan* that a temporary agency's "lack of supervisory control over its own employee" does not form the basis for tort immunity.  *Morgan*, 710 So. 2d at 1083.  The *Morgan* court noted that "modern justification for employer liability is not based so much on the employer's control of the employee's actions, but on the concept of 'enterprise liability.'"  *Id.*  A "'business enterprise cannot justly disclaim responsibility for accidents which may fairly be said to be characteristic of its activities.'"  *Id.* (quoting *Ermert v. Hartford Ins. Co.*, 559 So. 2d 466, 476 (La. 1990)).  Since "loaned employees" are the "stock in trade" of New Tech, and "a significant feature of its business is to pass control of the details of the work to its customers," "the application of the traditional 'right of control' test [is] problematic."  *Id.*

If the court were to simply weigh each factor evenly, then it would find that Hines was New Tech's independent contractor as more factors weigh in favor of that status.  However, the court must consider the presumption in favor of submitting this fact-intensive inquiry to the jury, and it must view the facts in the light most favorable to Energy XXI.  While this is indeed a close call, the factors weighing in favor of independent contractor status do not weigh so heavily in favor of such

11

a finding that the court must find as a matter of law that Hines was an independent contractor.  This

is a question best left for the finder of fact at trial.  Accordingly, New Tech's motion for summary

judgment is DENIED.

**B.    Gross Negligence**

New Tech argues, in the alternative, that the court should grant summary judgment in its

favor because there is no evidence to support Energy XXI's claim that Hines was grossly negligent.

Dkt. 59.  Under Louisiana law, gross negligence is "willful, wanton and reckless conduct that falls

between intent to do wrong and ordinary negligence."  *Houston Exploration Co. v. Halliburton*

*Energy Servs.*, 269 F.3d 528, 531 (5th Cir. 2001).  The Louisiana courts have described gross

negligence as the "want of even slight care and diligence," the "want of that diligence which even

careless men are accustomed to exercise," the "entire absence of care," the "utter disregard of the

[dictates] of prudence, amounting to complete neglect of the rights of others," and an "extreme

departure from ordinary care or the want of even scant care."  *Rabalais v. Nash*, 2006-0999, pp. 5-6

(La. 3/9/07); 952 So. 2d 653, 658 (citations and quotations omitted).

New Tech asserts that Hines's conduct does not rise to gross negligence as a matter of law

because Hines merely deviated from Energy XXI's procedures when he made the decision to

circulate instead of reverse circulating following the cementing operation because "at the time he felt

the well conditions necessitated using such a procedure."  Dkt. 59.  New Tech points out that Hines

testified that he made the decision based on his experience and to protect the Well and the crew.  *Id.*

New Tech additionally notes that Hines "was not absent from operations" and "was not neglectful

of his duties or delegating responsibility."  *Id.*  Instead, "[h]e performed his job and made decisions

which he believed were in the best interest of his borrowing employer and to avoid causing harm to

12

the Well and the crew." *Id.* New Tech argues that this shows that Hines "was acting with at the least some care," and therefore "cannot be considered wanton or reckless." *Id.*

Energy XXI contends that "ample evidence exists to show that Tony Hines, *without reason*, grossly departed not only from standard industry practices but from the specific, written procedure that he was supposed to follow in this recompletion project and thereby ultimately caused EXXI to suffer losses in excess of $10 million." Dkt. 60. Energy XXI notes that Clayton Celestine, who was working as the installation manager on the Hercules rig 203 during the events in question, stated that in his experience reverse circulation, which is the procedure New Tech claims Hines *should* have used, is "pretty much done everywhere." Dkt. 60 & Exh. C. Celestine testified that he spoke with Hines the night before the incident and suggested that Hines use reverse circulation, but, according to Celestine, Hines told him that he was not going to use reverse circulation. Dkt. 60, Exh. C. *But see* Dkt. 59, Exh. C at 136 (Hines's testimony) (testifying that he did not talk to Celestine about reverse circulation the night before the incident). Energy XXI next points out that Arthur Craighead, whose job was to oversee the workers at the rig and who has been working in the industry since 1974, testified that circulating as opposed to reversing out excess cement is "very contrary" to Energy XXI's recompletion procedure and to industry standards, in general. Dkt. 60 & Exh. D. Craighead testified that in the "oil fields, you just don't do that." Dkt. 60, Exh. D. Next, Energy XXI presents the testimony of Jeffrey Hughes, an expert with 34 years of experience in the oil and gas industry. Dkt. 60. Hughes testified that Hines "went off on his own, did whatever he wanted to do" and that in his "almost 34 years in the oilfield" he had "never seen or read of anyone" taking such an action. Dkt. 60 & Exh. E.

13

### 1.      *Departure from Procedure and Industry Custom*

New Tech first asserts that Hines's decision to deviate from the drilling procedure and industry custom does not constitute gross negligence as sometimes conditions at the Well required a deviation from procedures.  Dkts. 59, 61.  New Tech provides expert testimony indicating that the procedures are written before operations begin and sometimes need to be modified during the operation based upon conditions that are encountered during drilling.  *Id.*  New Tech points out, for instance, that Hines deviated from Energy XXI's procedure to run brushes and scrapers during cementing operations before he deviated from the reverse circulation procedure, and that Energy XXI approved of the deviation in procedure.  *See id.*  New Tech asserts that it is inconsistent for Energy XXI to claim that the former deviation from its procedures was not grossly negligent but that the latter was.  *Id.*

New Tech relies on a case from a Michigan state court, *Xu v. Gay*, in which the court held that the "defendant's ignorance of and failure to implement [industry] standards" was ordinary negligence, not gross negligence.  *Xu v. Gay*, 668 N.W.2d 166, 171 (Mich. Ct. App. 2003).  *Xu*, however, does not stand for the proposition that failing to follow company procedures or industry custom can *never* be grossly negligent.  *Xu* is a wrongful death case filed after an individual sustained a fatal head injury when he fell off a treadmill and hit a wall or window ledge that was only 2.5 feet behind him.  *Id.* at 168.  The plaintiff offered an expert who testified that the industry's standard of care regarding the safety distance behind treadmills was at least five feet.  *Id.* at 170.  The defendant denied knowing about the standard or knowing that a person could be propelled backwards off of a treadmill.  *Id.*  Additionally, there was evidence that the treadmills were placed withing 2.5 feet of the wall or window ledge by the previous owner of the fitness club and that the owner at the time of the accident had never moved them.  *Id.*  The court determined that the "defendant's mere

14

ignorance [did] not constitute conduct so reckless as to demonstrate a substantial lack of concern for whether an injury resulted to [the decedent]." *Id.* at 171.

Here, the evidence does not show that Hines was ignorant of industry standards or merely failed to remedy the failure of somebody else to follow industry standards. Instead, it demonstrates that Hines knew about the reverse circulation procedure and deliberately decided to do something different. *See, e.g.*, Dkt. 60, Exh. C (testimony of Clayton Celestine that he and Hines discussed the procedure the night before and that Hines did not want to reverse circulate). Clearly, not every departure from normal procedure or industry standards is grossly negligent—the departure from the brushes and scrapers procedure was actually specifically approved by Energy XXI (*see* Dkt. 59, Exh. D at 29-31)—but it would be a logical fallacy to conclude that a departure from procedure can never be grossly negligent just because some departures are not. If Hines's decision not to follow the procedure was an "extreme departure from ordinary care" falling somewhere "between intent to do wrong and ordinary negligence," then the decision could constitute gross negligence.

### 2.    *Extent of Negligence or Recklessness*

New Tech also argues that Hines's behavior cannot be considered grossly negligent because in Louisiana even "arguably reckless conduct does not rise to the level of gross negligence." Dkt. 61 at 10. New Tech relies on *Mullins v. State Farm Fire & Casualty Co.*, 697 So. 2d 750 (La. App. 1 Cir. 1997), and *Binkley v. Landry*, 2000-1710 (La. App. 1 Cir. 2001); 811 So. 2d 18. In *Binkley*, a 7-year-old spectator of a Mardi Gras parade in Baton Rouge, Louisiana was seriously injured when a driver of a parade float momentarily lost consciousness and drove into a crowd of spectators. *Id.* at p. 2; 811 So. 2d at 20. The plaintiffs filed suit for personal injury against the non-profit organization sponsoring the parade, among others, and claimed that the child's injuries were caused by the gross negligence of the non-profit organization in failing to supervise drivers and allowing

15

the driver to drive in the parade even though he had been drinking and suffered a medical condition that caused him to black out.  *Id.* at pp. 2-3; 811 So. 2d at 20-21.  The non-profit organization filed a motion for summary judgment based on a Louisiana statute that provides statutory immunity to "any krewe or organization . . . which presents Mardi Gras parades" unless the person's damages were "caused by the deliberate and wanton act or gross negligence of the krewe or organization . . . ." LSA-R.S. 9:2796 (West 2009); *Binkley*, 2000-1710 at p. 3; 811 So. 2d at 21.  The evidence showed that the driver had not attended a meeting held by the non-profit organization prior to the parade in which the organization informed drivers about its no drinking rule for drivers, that the non-profit had never questioned the driver about his driving record or any health issues before allowing him to drive in the parade, and that there were no established checkpoints before or during the parade route for the purpose of checking drivers.  *Id.* at p. 9; 811 So. 2d at 24-25.  None of the deposition testimony established whether any officer or member of the non-profit organization, other than the driver, witnessed the driver drinking a beer or appearing intoxicated.  *Id.*  The trial court and the appellate court determined from this evidence that plaintiffs failed to demonstrate there was an issue of material fact concerning whether members of the non-profit organization "acted in a deliberate and wanton or grossly negligent manner in supervising the drivers in the parade."  *Id.* at pp. 9-10; 811 So. 2d at 25.  The court noted that although plaintiffs had established that the driver had some alcohol to drink before and during the parade, they had "made no showing that [the non-profit] organization displayed an 'utter disregard' or an 'entire absence of care' with respect to the spectators at the parade."  *Id.* at pp. 10-11; 811 So. 2d at 25.  The court additionally noted that "the lack of closer supervision of drivers in the parade could be construed as negligence on the part of [the non-profit organization]," but "such actions taken, without more, would only amount to ordinary negligence rather than gross negligence."  *Id.* at p. 11; 811 So. 2d at 26.

16

In *Mullins*, the plaintiff, Jason Mullins, was a volunteer firefighter who was injured when a brick wall inside a burning residence collapsed on him. *Mullins*, 697 So. 2d at 752. A spark from an unattended burning stump and scrap lumber, which an employee of the homeowner had been burning, caused the house fire. *Id.* at 751-52. Mullins sued the homeowner and his insurer. *Id.* at 752. The defendants filed a motion for summary judgment, asserting that Mullins assumed the risks associated with his responsibilities as a firefighter under the "fireman's rule." *Id.* Under this rule, firefighters assume the risk of injury when performing their duties. *Id.* However, there are exceptions, one of which is that a firefighter may recover for injuries resulting from a risk arising from the emergency that he or she was hired to remedy if "the conduct of the defendant was so blameworthy that tort recovery should be imposed for the purposes of punishment or deterrence." *Id.* at 753. The trial court denied the motion for summary judgment, and, after a trial on the merits, determined that the conduct of the homeowner's employee amounted to gross negligence and rendered judgment in favor of the plaintiff. *Id.* The appellate court agreed that grossly negligent conduct fell within the parameters of "blameworthiness" described in the fireman's rule, but it held that the homeowner's employee's conduct in leaving the stump fire unattended was not grossly negligent. *Id.* at 754. The stump was located 3 or four feet below the bottom level of the house and was approximately twenty to twenty-five feet away from the house. *Id.* at 755. The employee testified that the wind had calmed before he ignited the stump and that he did not leave until the flames had diminished and only glowing embers were left. *Id.* The appellate court noted that if the employee had "left a live fire unattended in raging winds, perhaps [his] conduct could be classified as grossly negligent," but he had simply "exercised poor judgment in failing to make sure the fire was completely extinguished before leaving it unattended." *Id.* at 756.

17

In *Binkley*, the driver had two drinks before becoming unconscious and driving into the crowd, but the non-profit organization did not know he was drinking or that he had a health condition that caused him to black out.  In *Mullins*, the employee of the homeowner left embers from a stump fire unattended, but the stump was several feet from the house and the employee waited until there were only embers before leaving it.   Louisiana courts found that neither the non-profit organization nor the employee who left the stump unattended was grossly negligent as a matter of law because their conduct was not so "willful, wanton and reckless" that it fell "between intent to do wrong and ordinary negligence."  *Houston Exploration Co.*, 269 F.3d at 531; *see Binkley*, 2000-1710 at p. 9-10; 811 So. 2d at 25; *Mullins*, 697 So. 2d at 756.  Here, Hines's decision to deviate from the reverse circulation procedure likewise cannot reasonably be deemed as falling "between intent to do wrong and ordinary negligence."   Hines undoubtedly intended to deviate from the reverse circulation procedure, just as the employee in *Mullins* intended to leave the stump embers, and, as Energy XXI's experts contend, this was contrary to industry standards.  *See* Dkt. 60 & Exhs. D, E. But Hines's decision to deviate from Energy XXI's reverse circulation procedure comes nowhere close to an intent to do wrong.  Hines, who has over thirty years of experience drilling oil and gas wells, states that if he had tried to reverse circulate it would have blown the casing because of the pressure.  Dkt. 59 & Exh. C at 149.  Hines testified that his decision to circulate instead of reversing "was a weighed decision at the time at the present [sic.] of the problem that we had, and I had to make a decision which best benefitted the well, the wellbore, and the operation at hand. . . . Considering I had 7500 pounds on the drill pipe, I've got personnel safety to worry about, as well as well control, yes, I made the decision to go that way for a reason." Dkt. 59, Exh. C at 124.  While there is a question of fact as to *when* Hines made the decision, as Celestine claims that Hines told him the night before that he was not going to reverse out and Hines claims the decision was made

18

on the spot, there is no need to hold a trial to resolve this issue.  Dkt. 59, Exh. C at 137-38.  Dkt. 60, Exh. C.  Even if the decision was made the night before, there is no evidence that the decision was made in the "entire absence of care," with an "utter disregard of the [dictates] of prudence, amounting to complete neglect of the rights of others."  *Rabalais*, 2006-0999, at 5-6; 952 So. 2d at 658 (collecting gross negligence standards used by Louisiana courts).  No reasonable jury could conclude that the decision was grossly negligent.  Accordingly, New Tech's motion for summary judgment is GRANTED.

## IV. CONCLUSION

New Tech's motion for summary judgment on its independent contractor defense is DENIED.  However, New Tech's motion for summary judgment on Energy XXI's gross negligence claim, which is the only remaining claim against New Tech, is GRANTED.  Energy XXI's gross negligence claim against New Tech is hereby DISMISSED WITH PREJUDICE.

Additionally, though Hines and his consulting company, Nationwide Oilfield Consultants, Inc., did not move for summary judgment, the court *sua sponte* GRANTS summary judgment in their favor, as the only claims asserted against them are based on Hines's alleged gross negligence.  *See* Dkt. 43.  Energy XXI's gross negligence claims against Hines and Nationwide are hereby DISMISSED WITH PREJUDICE.

Finally, since this order disposes of the remainder of Energy XXI's claims and a final judgment will be issued contemporaneously with this memorandum and order, New Tech's motion for certification of the indemnification issue addressed in the court's April 15, 2011 order for interlocutory appeal (Dkt. 53) is DENIED AS MOOT.

It is so ORDERED.

Signed at Houston, Texas on January 10, 2012.

Gray H. Miller
United States District Judge